Fletcher Thomas MANN, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 69008.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1986.

Melvyn Carson Bruder, Dallas, for appellant.

Henry Wade, Dist. Atty. and R.K. Weaver, Jim Burnham, Norman Kinne & Winfield Scott, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was convicted of the capital murder of Christopher Lee Bates. The jury answered each special punishment issue[1] in the affirmative, whereupon the

---

1. See Art. 37.071, V.A.C.C.P.

court assessed punishment at death. Appellant does not contest the sufficiency of the evidence upon which his conviction is based, nor does he contest the sufficiency of the evidence upon which the jury made their findings concerning the special issues submitted to them pursuant to Art. 37.071, V.A.C.C.P. Appellant asserts eight grounds of error, five of which concern voir dire, two of which allege argument error, and one which concerns an alleged extraneous offense.

A brief recitation of the gruesome facts is necessary to appellant's extraneous offense contention to which we now turn.

On Thursday, September 11, 1980, at about 8:30 p.m., Robert Matzig, Christopher Bates, and Barbara Hoppe were watching a football game on television at an apartment shared by Bates and Matzig in Dallas. At about 9:00 p.m., Matzig answered a knock on the apartment door. Appellant and Martin David Verbrugge pointed pistols at Matzig and entered the apartment. Appellant and Verbrugge bound the arms and legs of Bates and Matzig, forced them to lie on the living room floor, and went through their pockets and wallets, taking money. They ordered Hoppe into the bedroom where they bound her arms and hands. Both appellant and Verbrugge raped Hoppe. Mattzig heard four or five loud slaps coming from the bedroom. Appellant walked out of the bedroom and into the kitchen, where he went through the drawers. He carried a long butcher-type knife back into the bedroom. Matzig heard Hoppe plead with them saying over and over, "No, no, don't do that." Hoppe was strangled and stabbed to death.

Appellant walked out of the bedroom, straddled Matzig, sitting on his back, and pointed a gun in his back. Matzig heard a noise as if the hammer was being pulled back on the gun and he rolled over and pleaded with appellant not to shoot him, saying that he had a couple of thousand dollars in the bank and would cash a check and get the money. Appellant and Verbrugge agreed.

Matzig wrote several checks to be cashed. Appellant and Verbrugge took Bates and Matzig in Matzig's vehicle to several grocery stores to cash the checks. Matzig cashed two of the checks and gave the money to appellant and Verbrugge. Appellant directed them to drive to a secluded area where Bates and Matzig were ordered out of the vehicle. Matzig walked slightly behind Bates. When Matzig saw Bates lying on his stomach and appellant standing over him, Matzig turned and ran back the way they had come. He was shot in the neck and fell to the ground, severely wounded but still alive. Bates was killed by a gunshot to the head. Appellant and Verbrugge left in Matzig's vehicle.

Matzig crawled over a fence toward a cliff below which was a Dallas Bulk Mail Center. He managed to attract a worker's attention and was subsequently rescued.

Appellant and Verbrugge returned to the secluded area where they had shot Bates and Matzig because they were afraid Matzig was not dead. However, they left the scene because the police and ambulance were already there.

■ Appellant contends that the trial court erred in admitting any testimony about the rape and murder of Hoppe. He argues that even if it were admissible as "res gestae" of the offense, it was still inadmissible because it did not meet the balancing test for admission of extraneous offenses. This test requires the extraneous offense to (1) be relevant to a material issue in the case; and (2) the relevancy value must be more probative than prejudicial. *Williams v. State,* 662 S.W.2d 344 (Tex.Cr.App.1983). Appellant argues that the testimony was not relevant to prove any element of the offense; there were no disputed issues in the case; and the testimony was highly prejudicial.

■ Appellant was charged with the capital murder of Bates while in the course of committing and attempting to commit the robbery of Matzig. The rape and murder of Hoppe were part of the entire episode or transaction that led to the murder of Bates.

As such, the testimony is part of the context of the offense. When the balancing test is applied, evidence of the context of the offense is almost always admissible under the reasoning that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all evidence may be realistically evaluated. See *Maddox v. State,* 682 S.W.2d 563 (Tex.Cr.App.1985) (Clinton, J. concurring); and *Taylor v. State,* 420 S.W.2d 601 (Tex.Cr.App. 1967). Rarely will the prejudicial value render inadmissible any evidence that is context of the offense.

In the instant case the testimony about Hoppe allowed the jury to view the offense in the proper setting, the way it actually ocurred. In any case, the unfolding of events and the progression of the crime is necessary to a full picture and understanding of what took place. In a prosecution for capital murder where consideration of the behavior of the defendant is critical, the entire context of the offense showing his actions is vital. The subsequent murder of Bates and the shooting of Matzig are further explained when it is shown that appellant and Verbrugge earlier had murdered their other companion. The testimony was properly admitted. See also *Bush v. State,* 628 S.W.2d 441 (Tex.Cr. App.1982); *Lott v. State,* 695 S.W.2d 237 (Tex.App.—Corpus Christi 1985).

In any event, appellant's confession, which was introduced into evidence and read to the jury, told of the rape and murder of Hoppe. Appellant did not object to the introduction of this evidence on the grounds that it contained an extraneous offense.[2] Thus, the same evidence to which appellant objected, pertaining to Hoppe, was properly admitted before the jury when the confession was admitted. See *Woolls v. State,* 665 S.W.2d 455 (Tex. Cr.App.1983). The ground of error is overruled.

Appellant next complains of argument made by the prosecutor at the guilt-innocence stage of trial. The prosecutor stressed the overwhelming evidence and responded to appellant's argument that the murder of Bates was not "in the course of committing theft." He ended his argument by saying:

> We can't bring you any more. If ever there was a capital murder case, you have it here today, and we brought you the evidence to prove it beyond any doubt.
>
> And I ask you to go in there and find Fletcher Thomas Mann guilty of capital murder so we can get on with what this trial is all about.
>
> I thank you for your time and your patience.
>
> MR. BRAUCHLE: [defense counsel] Your Honor, we would object to that as being improper argument.
>
> THE COURT: Overruled.

Appellant relies on *Cherry v. State,* 507 S.W.2d 549 (Tex.Cr.App.1974) as clear authority for reversal. In *Cherry,* supra, the prosecutor argued:

> I beleve (sic) that y'all know that the real reason we tried this case was not to determine guilt or innocence, but to determine what kind of punishment that is going to be set on this particular kind of crime."

Although not clear from the opinion, the remarks in *Cherry,* supra, apparently constitute error because they essentially tell the jury to ignore their duties to decide guilt or innocence and get to punishment because that is the only issue in the case. In the instant case, the remarks are directed mainly to the obvious strength of the prosecutor's case. While similar, we do not think the remark in the instant case is nearly as strong as that in *Cherry,* supra. Assuming, arguendo, that the remark constitutes error under *Cherry,* supra, we hold that it is harmless error at best in the instant case, in light of the overwhelming

---

**2.** When appellant's confession was introduced into evidence appellant renewed "our objections heretofore made." Those objections pertained only to the voluntariness of the confession, not to an extraneous offense contention.

evidence of guilt and in light of the fact that the context of the argument in which the remark was said emphasizes the overwhelming evidence and not the notion of the improper remark. The ground of error is overruled.

■ This next ground of error also concerns jury argument at the guilt-innocence stage. Appellant argued that the murder was not committed in the course of committing theft. In response, the prosecutor argued:

Mr. Poole over here tells you this man over here shot and killed Christopher Lee Bates. Shot him in the back of the head. But, he says, he didn't rob anybody out there, so you all let him go, let him go on down through those swinging doors and down through the elevator.

Well, if that isn't the most moronic thing I've ever heard. Ridiculous, under the evidence in this case. We have proved the case beyond any doubt. And he says the robbery was over. That's ridiculous.

Under his theory, under his theory, (sic) you go in a 7–Eleven Store, and you put your gun on the clerk, and you say, 'Young lady, give me your money.' And she gives you a dollar bill and you put it in your pocket. And you say, 'Come with me, young lady.'

And then you take this young lady out and you leave the North Dallas area where you—where you robbed her, where you went in the store and confronted her, and you take her out to a wooded area and you rape her and then you kill her, he says that's not robbery/murder.

It's one continuous transaction. It is one offense. The offense never stopped. There is only one assault involved, the assault continuing the whole time. That's exactly what the law is.

MR. BRAUCHLE: Your Honor, we would object—

MR. BURNHAN: No question about it.

MR. BRAUCHLE:—to this as being a misstatement of the law, and it's not contained in the—

MR. BURNHAN: There's only one assault and we can only try him one time—

THE COURT: Overruled.

MR. BURNHAN: —for this offense, the assult. (sic)

MR. BRAUCHLE: Note our exception.

MR. BURNHAM: He knows it's the law. There is no question about it. There's one assault out there this whole entire offense. And that's what the law says it is. And don't make a mistake—

MR. BRAUCHLE: Your Honor, we would once again object to this. Assault is not contained in the Court's charge.

THE COURT: Overruled.

MR. BRAUCHLE: Note our exception.

MR. BURNHAM: It is all one transaction. We get one shot at Fletcher Thomas Mann here, folks. Make no mistake about that.

MR. BRAUCHLE: Your Honor, we would object to this as being a misstatement of the law.

THE COURT: Overruled.

MR. BRAUCHLE: Note our exception. It's also outside the record.

THE COURT: Overruled.

MR. BURNHAM: The offense is one continuous offense. They're robbing all along, they're taking money from them, they have got their guns on them.

And Mr. Poole made some big point about he's got the gun on him, he goes in the store and gets the money, the robbery is over.

The robbery is not over. He's got the gun up in his face. It's still going one. He's still got the gun up in his face and he's sticking it in his ear out there in the car. Remember that?

It's not ended. He didn't say, 'Go on and go on home. I'll catch you at the next 7–Eleven, or the next Tom Thumb.' No, sirree. He's got that gun up on him. You think it ended? How can he say it's ended?

That's ridiculous. It's preposterous. It's moronic. Period.

Appellant contends on appeal that the prosecutor misstated the law when he said appellant could only be tried for one offense and that such misstatement was harmful because it misled the jury into believing they had the ultimate responsibility for all the events.

The State responds that appellant has misread the argument. The State contends the entire argument was made in response to appellant's earlier argument and was aimed at telling the jury that the entire assault by appellant was one continuous criminal transaction from which the State could carve only one conviction at that trial.

We agree that the gist of the prosecutor's argument was to refute the earlier argument made by appellant and tell the jury, correctly, that the robbery and murder were part of one continuous transaction. However, the State also commented that "It is all one transaction. We get one shot at Fletcher Thomas Mann here, folks. Make no mistake about that." Appellant's objection that this was a misstatement of the law and would mislead the jury into believing that unless they convicted appellant he could never be tried again is more applicable to this statement.

Assuming, arguendo, that the one line remark in the midst of the argument refuting appellant's earlier argument is improper, we find that there is not a reasonable possibility that it contributed to the jury's verdict. The argument was made at the guilt-innocence stage in which evidence of appellant's guilt was uncontradicted and came convincingly from his own confession and graphically from a surviving victim's detailed account. Appellant did not present a defense. In light of these facts we find the error to be harmless.

Appellant contends the court erred in excluding for cause five veniremembers in violation of the rule of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).[3] Specifically, appellant contends that the veniremembers' refusal to take the juror's oath [4] was based on the prosecutor's erroneous hypothetical "intellectual/emotional dilemma."

That no objection was made to the excusal of Charlene Dietrich is fatal to appellant's contention insofar as it relates to Dietrich,[5] and we need consider further only the other four excusals.

The State contends that each of the objections to the remaining excusals was upon too broad a ground to preserve error, in that appellant's counsel stated that the excusals were in violation of the rule of *Witherspoon* and *Adams* without stating *why* that rule was violated. We find that counsel sufficiently apprised the court of the basis of appellant's objection to the excusals.[6] Neither do we consider that ap-

---

**3.** In accord with the United States Supreme Court's opinion in *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) our analysis is based on the *Adams v. Texas*, standard.

**4.** Art. 35.22 states:

When the jury has been selected, the following oath shall be administered them by the court or under its direction: "You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render according to the law and the evidence, so help you God".

**5.** *White v. State*, 629 S.W.2d 701 (Tex.Cr.App. 1981).

**6.** We note that the State does not come to us with entirely clean hands in this regard. Al-

though the State presents this Court with a justification, discussed infra, for the excusal of the veniremembers, to the trial court the State said only "we submit." No ground was stated. We note that Art. 35.16(a), V.A.C.C.P. provides that, except for the absolute disqualifications resulting from a prior conviction, pending indictment, or insanity of a veniremember, *all* grounds for challenge may be waived. It is rather difficult to tell from "we submit" which grounds the State relied upon and which, if any, were waived. Because no objection to sua sponte excusal was lodged at trial, we will treat the State's submission of the jurors as if upon the basis offered in their appellate brief, but we find it somewhat ironic that the State seeks to prevent review for failure to comport with the grounds of objection at trial.

pellant's *argument* before this Court—that the juror's oath, at least as used in the instant case, is itself violative of *Witherspoon*—presents a new ground of error not comporting with the trial objection; appellant is merely explicating a legal theory upon which he contends his objections should have been sustained.

During voir dire the prosecutor explained the bifurcated trial procedure and the three punishment questions provided for in capital murder cases. See art. 37.071, V.A.C. C.P. He explained the two possible punishments and stressed that the State was seeking the death penalty as "the only just and proper punishment under all the facts and circumstances of this particular case." The veniremember was then informed in detail of the reality of the death penalty and execution procedures and was questioned about his views on the death penalty. Next, the prosecutor posited that there exist three types of potential jurors: those who oppose the death penalty and could under no circumstances participate in its assessment, those who support the death penalty and could so participate, and those who support the death penalty but who have personal qualms so strong as to prevent the veniremembers their own participation as jurors. The veniremember was asked into which category he put himself.

██ Finally, the prosecutor explained the three punishment questions and proposed what he called a "classic dilemma"—an intellectual/emotional dilemma:

> Appellant objected to the exclusion of veniremember Mathus, stating:
> MR. BRAUCHLE: We state that she was improperly disqualified under Witherspoon and Adams.
> THE COURT: All right.
> MR. BRAUCHLE: And if she is being disqualified under 3615B1, which the Court has not stated whether she is or not, we would state that that is unconstitutional; this juror was disqualified illegally.
>
> .   .   .   .   .
>
> MR. BRAUCHLE: Your Honor, could we have a ruling on my objection?
> THE COURT: I haven't heard an objection yet. I heard 'We think that the juror is not qualified.' That's no objection. State your objection.

VENIREMEMBER TINGLE[7]

> We've convinced you that all three questions should be answered yes. And yet, in your heart, you feel this man should not die for his part.
>
> Now, would you be able to go ahead and answer them all yes in that situation, or would you have to abstain or do a little—
>
> A.  I would probably have to abstain on one of them.
>
> .   .   .   .   .
>
> Q.  It's just that the law requires the jurors to—I hate to couch it in terms of make decisions like a computer, but that's about what it amounts to.
> A.  Uh-huh.
> Q.  They have to take the input, the data that they get from the witness stand and compute it, and whatever the computing turns out, whether it's yes or no answers, that's what comes out.
> A.  Uh-huh.
>
> .   .   .   .   .
>
> Q.  There is an oath that jurors must take before they can be on this jury.
> A.  Uh-huh.
> Q.  And again, based on what you've just told me, it would appear to me that you would not be able to take that oath.
> A.  Uh-huh.
>
> MR. BRAUCHLE: Your Honor, we would object to the disqualification of this juror under Witherspoon and Adams, if that is why she was disqualified. We do not know why she was disqualified.
> If she was disqualified under 3615B1, we would state that that statute is unconstitutional and we would object under those grounds. We think that under either scheme she is a qualified juror and should not be disqualified by the court.
> THE COURT: Objection will be overruled.
> MR. BRAUCHLE: Note our exception.
> Appellant's objections to the exclusion of the other three veniremembers at issue were substantially the same as the above-stated objection.

7.  This voir dire is representative of the questions asked of the other veniremembers.

Q. That oath is that you base your verdict strictly on the evidence that you hear from witness stand.

A. Uh-huh.

Q. And even though some people might argue that abstaining is something you can do, obviously abstaining would not be rendering a verdict according to the evidence.

A. That's true.

Q. You agree with that, don't you.

A. Uh-huh. That's really true.

Q. All right. And so you are telling me that you could not take that oath, at this point in your life?

A. I don't think I could.

Q. All right. Now, when you say I don't think I could, I know that's just a way of saying it, but we need something clear and unequivocal. Are you saying, 'I could not take that oath'?

Because if you can take the oath to base your verdict strictly on the evidence, then we're right back to square one.

See, if you can take that oath to base your verdict just on the evidence, then you're saying that 'Even though I feel like he should not die, I can go on and answer the question. I can compute the answers and come up with them and reach them.'

So if you tell us that you cannot take that oath, then you're not qualified and that would be—that would be it.

A. I can't take that oath.

Q. Fine. Are you firm and fixed on that, then?

A. Yes.

.    .    .    .    .

Q. And so that no matter what degree of evidence they produced you could never answer that question yes?

A. If I thought he should live and be imprisoned, I could not give him the death penalty.

.    .    .    .    .

THE COURT: The law doesn't require you to divest yourself of emotion, but let me ask you this: Are you indicating to me that if I asked you to raise your right hand and swear to a true verdict render, according to the law and the evidence in the case, you would have to tell me, 'Judge, in good conscience, I cannot swear to that because I understand that my questions would have an outcome on the effect of the case, (sic) and if I'm convinced that the questions would end in a certain result that I emotionally do not want, I would have to abstain—or I couldn't render a true verdict based on the law and the evidence'? Is that what you're telling me?

MRS. TINGLE: Yes.

THE COURT: And regardless of what the evidence might be, you could not render a true verdict in this situation?

MRS. TINGLE: No.

Appellant acknowledges that disqualification of the veniremembers was based upon a refusal to take the oath to render a true verdict according to the evidence and law in the case, which, as the State contends, is a bias against the law. See Art. 35.16(b)(3), V.A.C.C.P. and Art. 35.22, V.A. C.C.P. See also *Ellis v. State*, No. 69,210 (Tex.Cr.App.—delivered July 2, 1986). However, appellant contends that their refusal was based upon the prosecutor's hypothetical intellectual/emotional dilemma which was misleading and runs afoul of *Witherspoon*, supra. Appellant argues that "any 'emotional decision' based on the evidence is as valid a basis for a juror's verdict as an 'intellectual decision.' "[8] Appellant also argues that a veniremember's emotions are necessary to their decisions in exercising "guided discretion" under the punishment

---

**8.** As appellant also points out, this dilemma created by the prosecutor is not really a dilemma at all. It is almost impossible in practice and reality that a person could consciously reach two entirely separate decisions—one intellectual and the other emotional. A juror's decision is usually a blend of both and not something he can consciously separate.

scheme as noted in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

It is almost a "given" that emotions color a person's judgment and decision-making process and influence the way a person perceives facts. However, under *Adams,* supra, and *Witt,* supra, a person may be challenged for cause based on his views on capital punishment—whether those views be "intellectual" or "emotional"—if those views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."

While we do not recommend or endorse these kinds of questions relating to an "intellectual/emotional dilemma," which, practically speaking, are somewhat inseparable considerations, we do not believe they violate *Adams,* supra, and *Witt,* supra. The prosecutor essentially asked the veniremembers if they believed from the evidence that the answers to the three punishment questions should be yes, could they so answer in spite of any strictly "emotional" feelings not based on evidence or on lack of evidence that the defendant should not be given the death penalty. In other words, the prosecutor wanted to know if, as required by the oath under Art. 35.22, the veniremember could base his decision on the evidence and not permit feelings alone about the death penalty generally or in relation to the defendant, to change his vote. Although in unnecessarily convoluted form, the questions do not violate *Adams,* supra, and *Witt,* supra.

Appellant argues that the jurors were simply indicating that the evidence failed to satisfy them that the death penalty was warranted. The record indicates otherwise. The veniremembers stated that despite evidence proving that the death penalty was warranted, if they felt, emotionally—not based upon evidence, but strictly upon their feelings—that the defendant should not be given the death penalty, they would not answer the issues affirmatively.

Of course, if their emotional reaction to the evidence led them to doubt the sufficiency of the facts to prove the punishment issues beyond a reasonable doubt, a different issue is presented. In such an instance, if the way in which emotions cause a veniremember to interpret the facts would lead him to believe that the death penalty was not warranted, he is not excludable under *Adams,* supra and *Witt,* supra. This blending of emotion and intellect is why a jury's decisionmaking "process is not an exact science." *Adams,* supra. However, if a veniremember states that his emotions would cause him to essentially ignore the proven facts, he is challengeable because such feelings or views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams,* supra, and *Witt,* supra.

Appellant also contends that the jury's "guided discretion" is removed if veniremembers are struck because their emotions are not permitted to be considered in answering the punishment issues. In the instant case, veniremembers were not struck for admitting that their emotions would influence their answers. Rather, they were struck for stating that their emotions would control their answers despite evidence beyond a reasonable doubt contrary to their feelings. The "intellectual/emotional dilemma" posited by the prosecutor did not require the veniremembers to agree not to use any discretion. Through the questions the prosecutor essentially sought to be certain that the veniremembers would follow the oath and would use "guided discretion" according to the law as set out in the punishment issues.

Although the contention involves a challenge to the oath of V.T.C.A. Penal Code, § 12.31(b), the reasoning in *Granviel v. State*, No. 69,177 (delivered July 2, 1986) is applicable to appellant's argument regarding discretion.

... Appellant also claims that the oath unconstitutionally denies jurors the freedom to deliberate and decide issues of fact in a capital case in light of their

feelings toward the death penalty as a general issue, and arguments against the death penalty on policy grounds. In other words, appellant claims that jurors must be allowed to find the facts as a means toward accomplishing the result the juror thinks just; that is, according to the juror's belief whether this or any defendant should suffer penalty of death.

Perhaps jurors sometimes do subordinate the facts to the result they wish to reach. That is not the issue, however. Appellant claims that the Constitution *prohibits any* restraint on a juror's power to deliberate and find the facts according to his feelings about the death penalty. That contention runs contrary to the predicate of *Witherspoon v. Illinois,* supra, and *Wainwright v. Witt,* supra. What are those cases about, if not the extent of the State's power to remove prospective jurors who will not "temporarily set aside their own beliefs in deference to the rule of law" (*Lockhart v. McCree,* supra)?

*Granviel,* at pp. 26–27.

The grounds of error are overruled. The conviction is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, Judge, dissenting.

The record is clear that four of the complained of excluded venirepersons voiced general approval of the death penalty as a punishment for crime, and did not conscientiously oppose it. Each one said he could answer the three punishment questions based upon the evidence, and each said that he would, if shown a proper case, answer all three questions in the affirmative, even knowing that the sentence of death would result from his answers. Thus, the prospective venirepersons were qualified to sit as jurors in this cause. Instead, they were held to be disqualified. Given the above, one must immediately ask, "What caused their disqualification?"

Well, it seems that not only the prosecuting attorney but the trial judge as well gave each of them erroneous legal advice, telling them that they could not legally or morally take the oath to serve on the jury unless they could also swear that in answering the three punishment questions they would set aside their emotions and feelings and in some unexplained, rigid, mechanical, or automatic fashion arrive at their answers. This is not the law. To the contrary, but as appellant's counsel has put it, "the human element is not only an integral part of the jury's role—to evaluate witnesses, testimony, and evidence in the light of human experience—but it is a constitutional prerequisite to the carrying out of a death penalty ...; totally dispassionate procedures that lead to the imposition of a death sentence are intolerable."

Because of the erroneous advice that the prosecuting attorney and the trial judge gave the excluded jurors, their exclusion was based upon broader grounds than permitted by our law. They were thus improperly excluded.

I find that appellant's counsel correctly puts the issue in focus when he states the following:

The difficulty inherent in the disqualification scenario [that the majority opinion sets out in part] under attack in this case begins with the prosecutor's three step approach involving abstaining, and is compounded by his improper characterization of the jury's role as automatons devoid of feelings and emotions. Each juror was told *seriatim:* (1) as a juror, you can vote yes, no, or abstain on the punishment issues; (2) if you face the possible intellectual/emotional dilemma, you should abstain so as to avoid violating your oath as a juror and, on the other hand, your conscience; (3) if the possibility exists that you might abstain when confronted with the dilemma, you cannot take the oath because abstention runs afoul of the oath's mandate that you render a verdict based on the evidence and the law. Clearly, propositions (1) and (3) cannot coexist. Either the oath and abstention are compatible, as posited in (1), or they are incompatible, as

presented in (3). It is irrelevant which of the two propositions is legally sound; all that matters is that they both are accurate statements of the law. Through the use of these steps jurors were either misled into believing they could, in a proper case, abstain from voting on the punishment issue, which unalterably led to a 'Catch 22' conclusion that they could not both take the oath and abstain; or, if proposition (1) be correct, they were trapped by the fallacy of proposition (3) when they voiced an opinion that they might exercise their rights under proposition (1). In either event, there was no escape for those prospective jurors who believed the prosecutor's assertion that they could abstain. They were trapped in a maze with no exits.

The issue is not whether the prospective jurors were properly excluded because they said they could not take the oath. Rather, it is whether they were excluded because they could not be trusted to abide by the applicable law and to follow conscientiously the instructions of the trial court ... Each one of them said he could and would base his punishment verdict [sic] on the evidence. Each of them expressed an open mind with regard to capital punishment, and an ability to participate in proceedings that involved the imposition of the death penalty. Excluding them because they would not commit themselves, prior to trial, to set aside their general emotions and feelings when deliberating their punishment verdict [sic] can no more be countenanced than the excusing of the prospective jurors in *Adams*. Absent any probing of the jurors' concept of 'emotional decision,' as contemplated by *Adams* and *Burns v. Estelle*, no *Witherspoon*-approved basis for exclusion of the [four] prospective jurors can be established.

The majority opinion incorrectly holds, for the reasons stated, that the four venirepersons, of which complaint is made, were properly excluded from serving as jurors in this cause. I dissent.