**Simon RODRIGUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–92–0257–CR.**

Court of Appeals of Texas, Amarillo.

Feb. 24, 1994.

Rehearing Overruled March 24, 1994.

William L. Rivers, Amarillo, for appellant.

Danny Hill, Dist. Atty., Larry B. (Rusty) Ladd, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

A jury found appellant Simon Rodriguez guilty of the offense of murder, and assessed his punishment at confinement for 99 years and a fine of $10,000.00. Utilizing seventeen points of error, appellant seeks a reversal and acquittal or, alternatively, a remand on contentions that there is a fatal variance between the indictment and proof, and the trial court erred in admitting certain testimony and photographs. For the reasons expressed, the judgment will be affirmed.

· Although appellant does not challenge the sufficiency of the evidence to support the conviction, a summary of the evidence is appropriate to properly position his contentions. By an indictment returned on 13 December 1990, appellant was charged with knowingly and intentionally causing, on or about 10 November 1990, the death of Sophie Whalin by striking her "with an object unknown to the Grand Jurors at this time." The State adduced evidence that on the morning of 11 November 1990, the Amarillo trailer home of Sophie Whalin and her son, Charles Whalin, was afire, the origin of which was not determined. When the fire was extinguished, the badly burned bodies of the Whalins were found inside the home. Investigation revealed the Whalins were killed hours before the fire began, the home had been ransacked, and their car was missing.

Later that day, the Whalin automobile, driven by appellant and occupied by three other individuals, was stopped near Fritch. The other individuals were an adult, Terry Benwell, and two juveniles under the age of 15, Antonio Ascencio and Jeremy Sims.[1] The testimony of Ascencio and Sims showed that pursuant to the planning and direction of appellant, they entered the Whalin home through a window to steal money, and appellant remained outside. Shortly after the entry, Ascencio hit Sophie Whalin more than once with a pipe, which was earlier handed to him by either Sims or appellant. Appellant entered the home through the door and told Sims to make sure the woman was dead.

1. Subsequently, Benwell pleaded guilty to attempted burglary and was not tried for the homicide; Ascencio pleaded guilty to delinquent conduct concerning the murder of Sophie Whalin; and Sims pleaded guilty to delinquent conduct concerning the murder of both Whalins.

Ascencio noticed Sophie Whalin made some kind of movement, and Sims choked her with a clothes hanger. Then, at the direction of appellant, Sims went into the bedroom and hit Charles Whalin once on the head and strangled him with the pipe Ascencio used to hit Sophie Whalin. At the same time, appellant "punched the man in the face," or hit "the man on the top of the head ... four or five times."

During the police investigation, a metal bar was discovered under the sofa in the living room of the Whalin home, a piece of pipe was recovered near the crime scene, and a stick with a taped handle was found in appellant's possession at the time of his arrest. Although both Ascencio and Sims testified at trial that a pipe was used to strike Sophie Whalin, they both denied that the bar, the pipe, or the stick was the weapon used.

Before the grand jury returned the indictment, Sergeant B.J. White, a Potter County deputy sheriff, interviewed appellant and took his statement in which appellant stated that Ascencio hit Sophie Whalin with a pipe, and he was present when Sims gave a statement in which he stated that Ascencio hit her with a bar. The officer also had information from the medical examiner's office that the blows causing Sophie Whalin's death were consistent with the use of a pipe.

Sergeant White was the only witness appearing before the grand jury. He informed the jurors of the discovery of the bar, pipe and stick, that tests were being run, and that the police did not know what instruments had been used. A member of the grand jury which returned the indictment, P.J. Dovalina, testified that the grand jurors sought to find out what object was used to cause the death of Sophie Whalin, but they were unable to reach any definite conclusions about the object other than it was a blunt instrument.[2]

Doctor Charles Odom, the medical examiner with a specialty in pathology, performed an autopsy on the body of Sophie Whalin on 12 November 1990. He attributed blows by a blunt object to Sophie Whalin's neck as the fatal injury. Approximately two months later, and about a month after the indictment, he received information indicating that a pipe may have been used to inflict the injuries. Even with this information, he still opined that the blows were consistent with "[a] whole variety of instruments," including a pipe, a baseball bat, a heavy piece of board, or even a fist, shoe, knee, or the side of a hand in a Karate chop with enough force.

■ Embraced within appellant's first six points of error is his major contention that the trial court erred in failing to instruct a verdict of acquittal because of the fatal variance between the indictment and the proof. The fatal variance, appellant submits, occurred since the indictment has the allegation that the object was unknown to the grand jurors, while the evidence adduced at trial not only shows the death of Sophie Whalin was caused by the use of a pipe, but the State had the statements of Ascencio and Sims, whose testimony the State was mainly relying upon for a conviction, that a pipe was used. Hence, on the authority of *Jones v. State*, 132 Tex.Crim. 216, 104 S.W.2d 42 (1937), and *Villarreal v. State*, 752 S.W.2d 704 (Tex.App.—Corpus Christi 1988, no pet'n), the proof fails to support the allegation that the object was unknown to the grand jury. Furthermore, appellant adds, because the knowledge that a pipe was used was available to the grand jury, the evidence was insufficient to show the grand jury made a diligent effort to determine the manner and means causing her death. *See Jordan v. State*, 520 S.W.2d 388 (Tex.Cr.App.1975).

If, as appellant contends, the evidence at trial shows a pipe was the object employed to inflict the fatal injury, the State must prove that when the grand jury returned the indictment alleging the object was unknown, the grand jury did not know the object employed and had used due diligence in its attempts to ascertain the object. *Matson v. State*, 819

---

2. Later the same day, the grand jury, considering the same evidence, returned petitions for adjudication against Ascencio and Sims. Although the petitions were not in evidence, the trial court took judicial notice that "the cause of death of Sophie Whalin by striking her with a pipe, by strangling her with a coat hanger and by other means unknown to the County Attorney at that time," was the allegation in the petition against Ascencio.

S.W.2d 839, 847 (Tex.Cr.App.1991). However, when the grand jury returned the indictment, its knowledge of the object employed was not that certain.

At the time Sergeant White imparted the information upon which the grand jury acted, he knew that two of the three people involved in the murder had called the murder weapon a pipe and the other had said it was a bar. He informed the grand jury that three objects had been recovered, but in the absence of laboratory reports, he was only able to tell the grand jury that the police were not certain what instruments had been used, even though he had information that the deadly blows were consistent with the use of a pipe. At the same time, there was the information in the autopsy report, but if it was available to the grand jury, it revealed no more than the deadly blows were caused by a blunt instrument. Indeed, as it developed at trial, none of the objects recovered during the investigation was identified as the murder weapon, and the pathologist, accepting that the fatal blows were consistent with the use of a pipe, would not exclude a whole variety of other instruments.

Given the information presented and available to the grand jury, the data did not exclusively establish the identity of the object employed as did the available information in *Jones v. State*, 104 S.W.2d at 43, and in *Villarreal v. State*, 752 S.W.2d at 705, upon which appellant relies. Although the grand jury reasonably could have concluded a pipe was the most likely cause of the blows inflicted on Sophie Whalin, a variety of other instruments could not be excluded. The medical evidence at trial confirmed the testimony of the grand juror that the grand jury was unable to reach any definite conclusion about the object other than it was a blunt instrument.

Consequently, the State satisfied its burden to prove the grand jury did not know the object employed and had used due diligence to ascertain the object. *Boyd v. State*, 811 S.W.2d 105, 123 (Tex.Cr.App.), *cert. denied*, —— U.S. ——, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991); *Corbett v. State*, 493 S.W.2d 940, 953 (Tex.Cr.App.1973); *cert. denied*, 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756 (1974). Appellant's first six points of error are overruled.

Appellant has grouped his points seven through seventeen to charge the trial court erroneously admitted testimony of the autopsy, and photographs, of Charles Whalin, and photographs of Sophie Whalin, because the evidence was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice. Appellant having made the proper objections to the admission of the evidence, consideration of the merits of the points will be referenced to rules 401 through 404(b), Texas Rules of Criminal Evidence as interpreted, particularly in *Long v. State*, 823 S.W.2d 259 (Tex.Cr.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992), and *Montgomery v. State*, 810 S.W.2d 372 (Tex.Cr.App.1991).

■ The court's admission of State's exhibit 10, a photograph of Sophie Whalin, over appellant's objections that it was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice, is the subject of points sixteen and seventeen. The photograph "accurately depicts" the scene viewed by a fireman, who "found an elderly woman sitting semi-upright on the sofa in the living room" and "burned beyond almost recognition." A neighbor identified the person in the photograph as Sophie Whalin. The State concedes the photograph is gruesome, albeit not shockingly so.

Disputing the relevance of the photograph, and therefore its admissibility, appellant, noting the fireman did not identify the person in the photograph, asserts that the photograph does not have any tendency to make the existence of any fact of consequence to the determination of the action more probable than it would be without it. Any fact of consequence, he adds, can be proved by other evidence, albeit he does not suggest any such evidence. Then, appellant argues, the admission of the photograph permitted the jury to draw the natural inference that he caused the injuries resulting from the fire, an incident for which he was not on trial, thereby creating a substantial danger of prejudice.

At the outset, it is observed that nothing in the record indicates any of the participants in

the offense was responsible for the fire, which was shown to have resulted from an explosion occurring "a few hours" after the murder of Sophie Whalin. But, aside from that, an element of the State's burden of proof was to establish the burned body as that of Sophie Whalin. *Harris v. State,* 738 S.W.2d 207, 220 (Tex.Cr.App.1986), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). Appellant's cross-examination of Dr. Odom revealed that although the body upon which he performed the autopsy came identified as that of Sophie Whalin, identification could not be made from the body itself or from available records per se. Therefore, the photograph, identified by a neighbor as that of Sophie Whalin, and by Dr. Odom as the person upon whose body he performed the autopsy, satisfied the State's burden of proof to sufficiently establish the identity of the body. *Rains v. State,* 604 S.W.2d 118, 120 (Tex.Cr.App.1980).

In this light, the photograph was needed for, and therefore relevant to, the determination of identification. Given the inherent probativeness of the photograph, it cannot be said that the trial court clearly abused its discretion in determining its probative value was not substantially outweighed by any danger of unfair prejudice. *Montgomery v. State,* 810 S.W.2d at 392. Appellant's points of error sixteen and seventeen are overruled.

■ For the purpose of showing appellant's intent, the State offered, and the court admitted over appellant's appropriate objections, the testimony of Dr. Jeffrey Barnard concerning the autopsy he performed on Charles Whalin, and three photographs of him, one taken of his body in the home and the other two taken at the autopsy. Appellant challenges the admissions, claiming reversible error by his points of error seven through fifteen, which he grouped for presentment. The points are appellant's contentions that the admissions are inadmissible evidence of another crime, are not relevant, and the probative force of the evidence is substantially outweighed by the danger of unfair prejudice.

The State, having noted that appellant's trial strategy was to disavow any intent for murder to occur during the course of the burglary, responds that the evidence was crucial to the element of intent it was required to prove. The testimony and photographs, the State says, was critical to illustrate injuries consistent with the juveniles' testimony and to show the identification of Charles Whalin.

■ At the outset, it is observed that evidence of the context of the offense is almost always admissible in order that the jury may have the offense placed in its proper setting so that all evidence may be realistically evaluated. *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Cr.App.1986), *cert. denied,* 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). In fact, appellant conceded in his brief that it was impossible to try him for the murder of Sophie Whalin without eluding to the murder of Charles Whalin. Conformably, he did not object to the testimony of the unfolding of events and the progression of the crime; yet, he disputes that the challenged testimony about the autopsy on, and the photographs of, the body of Charles Whalin, has any bearing on his intent as a party to the murder of Sophie Whalin, the crime for which he was tried.

The State persuaded the trial court that the autopsy testimony and photographs were relevant to appellant's intent. That intent, as expressed in the State's brief, was that "evidence of Charlie Whalin's murder was clearly relevant as evidence of appellant's intent to murder Sophie Whalin;" yet, the State also expressed that "[t]he death of Sophie Whalin was relevant to show Appellant's intent to commit the murder of Charles Whalin."

In this prosecution, appellant was neither charged with, nor tried for, the murder of Charles Whalin; he was tried solely as a party to the murder of Sophie Whalin. Although the murder of Charles Whalin was a transactional part of, and indivisibly connected to, the murder of Sophie Whalin, thereby making the testimony of his murder admissible to explain the context of the offense for which appellant was on trial, neither the testimony concerning his autopsy, nor the autopsy photographs, had any logical relationship to the consequential fact of appel-

lant's intent to murder Sophie Whalin. In view of the ample evidence to establish appellant's culpability for the murder of Sophie Whalin, the sufficiency of which he does not challenge, the evidence would not have been less persuasive by the exclusion of Dr. Barnard's testimony and the photographs of Charles Whalin. It follows that the testimony and photographs were irrelevant, and should not have been admitted into evidence. Tex.R.Crim.Evid. 401–402; *see, also, Brown v. State,* 757 S.W.2d 739, 740–41 (Tex.Cr.App. 1988). The remaining question is whether the admissions constituted reversible error. *See* Tex.R.App.P. 81(b)(2).

Other than revealing the cause of Charles Whalin's death as the result of blunt force injuries of the neck, Dr. Barnard's testimony essentially confirmed the unobjected to testimony of Ascencio and Sims regarding the attack on Charles Whalin. The three photographs of Charles Whalin shown to the jury were enlarged color pictures, which were monochromatically reproduced for the appellate record. The first depicts his head and neck, and each of the other two shows only a portion of his face. None of the three shows any more than the effect of the fire on his face as described by a fireman at the scene.

In brief, Dr. Barnard's testimony and the photographs were merely cumulative of testimony the jury heard without objection. Because inadmissible evidence can be rendered harmless if other evidence is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove, *Brown v. State,* 757 S.W.2d at 741, it may be fairly concluded beyond a reasonable doubt that the admission of Dr. Barnard's testimony and the photographs of Charles Whalin did not contribute to the judgment of conviction or the punishment. *Id.; Long v. State,* 823 S.W.2d at 275. Appellant's seventh through fifteenth points of error are overruled.

The judgment is affirmed.