**AFFIRM; and Opinion Filed June 11, 2013.**



# In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00022-CR

### ANTHONY RAYMOND VILLARREAL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 265th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F09-51900-R

## OPINION

Before Justices Lang-Miers, Murphy,[1] and Fillmore
Opinion by Justice Fillmore

Anthony Raymond Villarreal[2] appeals his conviction for evading arrest using a motor vehicle. The jury found Villarreal guilty and assessed punishment of ten years' confinement and a $10,000 fine. In two issues, Villarreal contends we must reverse his conviction because the trial court erred by (1) admitting extraneous evidence during the guilt-innocence stage of the trial, and (2) allowing punishment argument during the guilt-innocence stage of the trial. We overrule Villarreal's issues and affirm the trial court's judgment.

---

[1] Justice Mary Murphy was on the panel and participated at the submission of this case but, due to her retirement from this Court on June 7, 2013, did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 44.1(a), (b).

[2] When he testified at trial, Villarreal introduced himself as "Anthony Raymond Villarreal." When recalled for cross-examination testimony, Villarreal responded to questioning that his full name is "Raymond Anthony Villarreal." The indictment and judgment refer to "Raymond Anthony Villarreal." In his docketing statement on appeal, Villarreal is referenced as "Anthony Raymond Villarreal." In this opinion, we refer to Villarreal as "Anthony Raymond Villarreal," as he is identified in his appellate brief.

**Background**

Villarreal was indicted for the offense of evading arrest and detention using a motor vehicle with a prior conviction for "evading." *See* TEX. PENAL CODE ANN. § 38.04 (West Supp. 2012).[3]  The indictment also contained an enhancement paragraph alleging a prior offense of assault on a public servant.  Villarreal pleaded not guilty to the offense of evading arrest and detention using a motor vehicle and true to the prior conviction for assault on a public servant.

At trial, Dallas Police Officer Kevin Keim testified he was working patrol around 11:00 p.m. on February 23, 2009 when he responded to a radio dispatch that there had been an aggravated robbery at a Church's Chicken in his patrol area.  The radio dispatch described the robbery suspects as two Latin males in a dark colored, four-door, nineties model Grand Marquis. Keim was driving to the robbery location when he saw a dark-colored Grand Marquis "right in front of the Church's Chicken."  There were two people in the car.  According to Keim, it looked as though the driver of the Grand Marquis was driving by the location "watching what was going on."  Keim followed the Grand Marquis because "a lot of times suspects on crimes after the crime has been committed, they'll start to circle back sometimes to see what's going on after the officers get there."  Keim, who was driving a marked squad car and was in full uniform, followed the Grand Marquis, and a short time later turned on the emergency lights and siren of his squad car.  It was Keim's intention to detain the people in the vehicle to question them about the aggravated robbery.

Villarreal, who was driving the Grand Marquis, did not stop but instead entered Interstate 30.  Keim continued to follow Villarreal, who was driving "pretty fast."  When Keim reached a speed of eighty miles per hour, he turned off his emergency lights, thinking that might cause

---

[3] We recognize that section 38.04 of the penal code has been amended since the date of the offense.  Because the amendments do not affect our analysis, we cite to the current version of section 38.04 of the penal code for convenience.

Villarreal to slow down, and radioed for assistance. Villarreal did slow down, and Keim continued to follow him. As other officers and a police helicopter arrived, Villarreal exited the Interstate. As he did so, officers activated the emergency lights on the patrol cars and the helicopter pilot turned on the helicopter's search light and followed Villarreal. Villarreal "went through [a] red light and hung a left and just shot down the road and went through another red light." Two officers, who were in a faster car, and the helicopter continued to chase Villarreal. When Keim caught up with the other officers, Villarreal was outside of the Grand Marquis in handcuffs. According to Keim, Villarreal was later questioned by detectives about the robbery, but he was not charged with that offense.

Senior Corporal Darian Loera testified that he and his partner, Senior Corporal Teena Schultz, responded to Keim's call for assistance. They caught up with Keim as he was following Villarreal on Interstate 30. They followed for a short time until the police helicopter arrived. Once the helicopter arrived, they continued to follow Villarreal. Villarreal exited the Interstate and stopped at a red light. At that time, the decision was made to stop Villarreal. The helicopter pilot turned on the helicopter's search light, and officers in "four, maybe more" patrol cars following Villarreal activated the patrol cars' emergency lights and sirens. Villarreal immediately turned left through the red light and drove away through a residential neighborhood. Loera followed Villarreal and the helicopter search light for about ten minutes until Villarreal "wrecked out on top of a residence in the front yard." At that time, Loera saw Villarreal open the driver's door, get out of the car and "take off running." Loera chased him on foot until Villarreal turned and stood "in an aggressive manner." Although Loera commanded Villarreal to get on the ground, he did not do so until Loera hit Villarreal several times on the leg with a baton. Villarreal continued to resist being put into handcuffs, but Loera and another officer were able to handcuff him and take him into custody.

Schultz testified she and her partner, Loera, responded to Keims's assistance call. Her testimony regarding the chase was substantially similar to the testimony of Keim. When they saw Villarreal get out of the wrecked car and run, Loera followed Villarreal. Schultz saw the passenger in the car "trying to get out." Schultz stopped him as he was getting out of the car and "put him on the ground and handcuffed him."

Villarreal testified that he was not in any way involved in the aggravated robbery at Church's Chicken. Villarreal admitted he evaded arrest, but claimed he was not using a motor vehicle when he did so. According to Villarreal, his friend Jose Morales was driving Villarreal's four-door green Grand Marquis when the incident occurred and Villarreal was a passenger in the vehicle. Villarreal also testified that he had just installed a new amplifier and subwoofers in his car and music was playing at a "very high" volume, enough to make the windows shake. Villarreal claimed he heard no sirens over the sound of the music and did not see any patrol car emergency lights until after they turned left at the stoplight upon exiting the Interstate. Villarreal testified he did not notice the helicopter search light until after they were in the "dark neighborhood." After the police chase when the car came to a stop, Morales moved toward the passenger side. Villarreal explained that the passenger door inside handle was missing, and the door could only be opened from the outside. Villarreal crawled over Morales and exited the driver's side of the car, ran away from the scene, and jumped a fence.

After hearing this and other evidence, the jury found Villarreal guilty of evading arrest using a motor vehicle with a previous conviction for evading. They later assessed punishment at ten years' confinement and a $10,000 fine. This appeal followed.

### Admission of Extraneous Evidence

In his first issue, Villarreal contends the trial court erred by admitting extraneous evidence during the guilt-innocence stage of his trial. Specifically, Villarreal contends the trial

court should not have allowed testimony "that tied Villarreal to an aggravated robbery." After reviewing the record, we disagree.

Villarreal requested in a motion in limine that the trial court prevent the State from "going into an unrelated robbery" by presenting evidence concerning the aggravated robbery at Church's Chicken which prompted the radio dispatch describing the robbery suspects as two Latin males in a dark colored, four-door, nineties model Grand Marquis. In support of his motion in limine, Villarreal argued the extraneous offense evidence was more prejudicial than probative. *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").[4] The State responded to Villarreal's motion in limine by arguing that evidence of the aggravated robbery would be offered to establish the reason police pursued Villarreal and not to prove Villarreal committed an aggravated robbery. The trial court denied Villarreal's motion in limine and allowed testimony indicating that Keim attempted to stop Villarreal's vehicle because it matched the description of a vehicle used in an aggravated robbery in the area where Villarreal was driving.

We review the trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *Id*. Although evidence of other crimes, wrongs, or acts is not admissible to "prove the character of a person in order to show action in

---

[4] On appeal, appellant argues the extraneous offense evidence was not relevant under rule of evidence 404(b) and was unfairly prejudicial and thus inadmissible under rule of evidence 403. Appellant did not object to this evidence at trial on the basis of relevance, and we cannot consider the relevance argument on appeal. To preserve error for appellate review, the complaining party must make a specific objection and obtain a ruling from the trial court on the objection. *See* TEX. R. APP. P.33.1(a)(1)(A); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). The point of error on appeal must comport with the objection made at trial. *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986).

conformity therewith," it may be admissible for other purposes. *Id.* One such purpose is to show context related to the charged offense. *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (extraneous offense evidence may be admissible as contextual evidence). There are two types of contextual evidence: (1) evidence of another offense connected with the primary offense, referred to as "same transaction contextual evidence"; and (2) general background evidence, referred to as "background contextual evidence." *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991). Background contextual evidence is admissible because it is helpful to the jury. This type of evidence "fill[s] in the background of the narrative and give[s] it interest, color, and lifelikeness." *Id.* at 87. The jury is entitled to know all relevant surrounding facts and circumstances of the charged offense. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Such evidence is admissible when the offense would make little or no sense without also bringing in that evidence, and is admissible "only to the extent it is necessary to the jury's understanding of the offense." *Id.*

When the admissibility of evidence is challenged under rule of evidence 403, a trial court must perform a balancing test to determine if the probative value of the evidence is substantially outweighed by its prejudicial effect. TEX. R. EVID. 403. When the balancing test is applied, evidence of the context of the offense is almost always admissible under the reasoning that "events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all the evidence may be realistically evaluated." *Mann v. State*, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986); *see also Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (evidence of extraneous offenses admissible to show the context in which the criminal act occurred and the "jury has the right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence"). "Rule of evidence 403 favors the admission of relevant evidence and carries a presumption that relevant evidence

will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).

The rule 403 balancing test includes the following factors: (1) how compellingly evidence of the extraneous offense serves to make a fact or consequence more or less probable; (2) the extraneous offense's potential to impress the jury in some irrational but indelible way; (3) the trial time that the proponent will require to develop evidence of the extraneous misconduct; and (4) the proponent's need for the extraneous transaction evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Here, the testimony regarding the aggravated robbery at Church's Chicken shortly before Villarreal was seen driving a vehicle matching the description of the vehicle connected to the robbery and at the location of the robbery provided the contextual background for the consequent police pursuit of Villarreal's vehicle. Without some explanation of why officers were trying to stop Villarreal's vehicle, it would be difficult for the jurors to understand the context of the events that followed. The first factor favors admission. As to the second factor, there is nothing in the record to indicate that admission of evidence regarding the aggravated robbery at Church's Chicken would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged" of evading arrest and detention using a motor vehicle. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Further, both Keim and Loera testified that after further investigation, Villarreal was not charged with the aggravated robbery, and Villarreal testified he was not involved in an aggravated robbery at Church's Chicken. Accordingly, this factor also favors admission. The third factor looks to the "time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997) (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991)). Of the witnesses from which the State elicited testimony in its case-in-

chief, the testimony regarding the reason the officers pursued Villarreal's vehicle as a result of it matching the description of the vehicle connected to the aggravated robbery was not lengthy. The third factor does not require exclusion of the testimony regarding the extraneous offense. The testimony regarding the aggravated robbery at Church's Chicken shortly before Villarreal was seen driving a vehicle matching the description of the vehicle connected to the robbery and at the location of the robbery was probative in establishing why the police pursued Villarreal's vehicle and for establishing the basis for seeking to detain Villarreal. Thus, the final factor also weighs in favor of admission of the evidence.

Here, the trial court admitted the complained-of evidence to show why Keim initially pursued Villarreal's motor vehicle in an effort to detain Villarreal. Without reference to the police radio dispatch concerning the aggravated robbery, it would have been difficult for the jury to understand the context of the charged offense. The trial court, after balancing the *Wheeler* factors, could have reasonably concluded the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Wheeler*, 67 S.W.3d at 888. The trial court's admission of the complained-of evidence, as necessary to an understanding of the contextual background of the charged offense, was within the zone of reasonable disagreement. Thus, after reviewing the record, we cannot conclude the trial court abused its discretion in admitting the evidence. We resolve Villarreal's first issue against him.

## Punishment Argument

In his second issue, Villarreal contends that during the guilt-innocence stage of the trial, the trial court erred by allowing "punishment" argument concerning law that was not included in the trial court's charge and instructions to the jury. According to Villarreal, the prosecutor argued "essentially that the offense was a third-degree felony rather than a state jail felony." Villarreal contends that the prosecutor's "emphasis" on the degree of the offense "went outside

the law as given in the court's charge" and "distracted the jury from its responsibility" during the guilt-innocence stage of the trial, and that Villarreal's objection thereto should have been sustained. The State responds that the prosecutor's remark was permissible jury argument and not objectionable or reversible error.

In its guilt-innocence stage closing argument, the prosecutor stated, "[A]s we talked about in voir dire, it is a third-degree felony if you use a motor vehicle while you evade the police and you have a previous conviction for evading." Villarreal objected to the State "instructing the jury as to the law that is not in the charge with respect to third-degree felony." The trial court overruled Villarreal's objection.

Initially, we note that Villarreal has waived this issue by failing to object to the alleged impermissible argument each time the prosecutor mentioned the degree of the offense during closing argument. S*ee Briones v. State*, 12 S.W.3d 126, 129 (Tex. App.—Fort Worth 1999, no pet.) (in general, where impermissible argument is pursued after objection, counsel must lodge a new objection each and every time the objectionable argument is made to preserve error for appellate review). However, assuming Villarreal preserved this second issue for appeal, we are not persuaded by his argument.

Villarreal relies on *McClure v. State*, 544 S.W.2d 390 (Tex. Crim. App. 1976), *overruled on other grounds by Werner v. State*, 711 S.W.2d 639, 646 (Tex. Crim. App. 1986), in support of his argument the trial court erred in overruling his objection to the prosecutor's statement that it is a third-degree felony "if you use a motor vehicle while you evade the police and you have a previous conviction for evading." However, in *McClure*, the court of criminal appeals reversed a conviction because the prosecutor repeatedly referred to the possible range of punishment despite objections from the defense counsel and instructions by the trial court. *McClure*, 544 S.W.2d at 393. In *McClure*, the prosecutor's argument was improper because "[i]t was a plea to the jury to

–9–

consider the amount of punishment, rather than the facts, in determining the offense for which [defendant] should be convicted." *Id.* Under *McClure*, "the harm [was] not in informing the jury concerning punishment, but argument for conviction based on punishment." *Hart v. State*, 581 S.W.2d 675, 679 (Tex. Crim. App. [Panel Op.] 1979).

Here, the prosecutor's reference to the degree of the offense included no explicit statement regarding the range of punishment assigned to a third-degree felony. *See Cifuentes v. State*, 983 S.W.2d 891, 893–94 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (isolated reference to lesser included offense as misdemeanor is not reversible error provided no explicit statement regarding range of punishment assigned to felonies and misdemeanors is made); *Esparza v. State*, 725 S.W.2d 422, 427 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (statement that a lesser-included offense was a misdemeanor was not error where prosecutor never referred to the range of punishment during the argument at the guilt-innocence stage); *Becerra v. State*, 652 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1983, no pet.) (prosecutor's statement regarding choices available to jury in returning verdict, one of which was a misdemeanor, was not error because prosecutor made no reference to the range of punishment which accompanied any of the offenses).

A proper jury argument will consist of one of the following: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from the evidence; (3) answer to the opposing counsel's argument; and (4) a plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim. App. 1987). In examining challenges to jury argument, we are to consider the remark in the context in which it appears. *Denison v. State*, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983). We have reviewed the prosecutor's entire argument. The prosecutor did not attempt to inject punishment into the guilt-innocence stage of the trial and did not refer to the range of punishment attached to the offense. The prosecutor's argument to the jury was not an

impermissible plea to the jury to consider punishment as opposed to facts when determining Villarreal's guilt or innocence. Rather, the State's argument permissibly urged the jury to convict Villarreal of the more serious third-degree felony charged in the indictment instead of the lesser-included offense and was responsive to evidence in the record.[5] We conclude the trial court did not err by overruling Villarreal's objection. We resolve Villarreal's second issue against him.

## Conclusion

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
Tex. R. App. P. 47

120022F.U05

---

[5] *See Barnes v. State*, No. 01-01-01086-CR, 2002 WL 31388820, at *2 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.) (not designated for publication) (State did not attempt to inject punishment into guilt-innocence stage of trial, State never referred to the range of punishment attached to the offense, and State's argument was not a plea to the jury to consider punishment as opposed to facts when determining guilty or innocence; State's argument was responsive to evidence in the record and was not intended to inflame the jury).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY RAYMOND VILLARREAL,
Appellant

No. 05-12-00022-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F09-51900-R.
Opinion delivered by Justice Fillmore,
Justices Lang-Miers and Murphy
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of June, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE