**Ernest Dewayne SMITH, Appellant,**

**v.**

**STATE of Texas, Appellee.**

**No. 11–02–00024–CR.**

Court of Appeals of Texas,
Eastland.

June 26, 2003.

---

Tony Aninao, Houston, for appellant.

Charles Rosenthal, Jr., District Attorney, Appellate Section Harris County Criminal Justice Center, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

**W.G. ARNOT, III, Chief Justice.**

The jury convicted Ernest Dewayne Smith of aggravated robbery and assessed his punishment at 20 years confinement. We affirm.

There is no challenge to the sufficiency of the evidence. Yong Chan Kim testified through an interpreter that he owned a beauty supply store where he and his wife worked. Kim testified that on January 14, 2000, he, his wife, and his one-year-old son were in the store getting ready to close when appellant entered the store with a gun and said: "Don't move. Where is the money?" Kim said that appellant pointed the gun at Kim's head and demanded money. Appellant took the money from the cash register and from a cash box below the register. The Houston Police Department was able to recover fingerprints from the cash register and the cash box. The fingerprints recovered from the cash register and the cash box matched appellant's fingerprints. Kim identified appellant from a police lineup as the person who robbed his store.

In his first point of error, appellant argues that the appellate record is incomplete because the court reporter did not record some of the bench conferences at trial. The record indicates that the court reporter did record several bench conferences at trial; however, appellant complains of seven bench conferences that were not recorded.

The first four unrecorded bench conferences occurred during the guilt/innocence phase of the trial. The first unrecorded bench conference occurred during the testimony of Officer James R. Schultea. The State questioned Officer Schultea about how he was assigned appellant's case. Appellant objected, and the trial court overruled his objection. After the bench conference, Officer Schultea explained that, at the time he was assigned the case, there was no suspect and that appellant later became a suspect. In the second unrecorded bench conference, Officer Richard K. Perez had testified that he recovered fingerprints from the scene, and the State offered Exhibit No. 3. After the unrecorded bench conference, the State requested to admit the exhibit and show the front of the exhibit to the jury. Appellant originally stated "[s]ubject to my objection about hearsay." However, when the trial court informed appellant that only the front of the exhibit would be shown to the jury, appellant stated that he had no objection. The next two unrecorded bench conferences occurred during the testimony of Officer Walter L. Stairhime, Jr. The State asked Officer Stairhime what information Exhibit Nos. 3, 4, and 5 contained. Appellant objected, and a conference was held off the record. The State later asked Officer Stairhime how he obtained appellant's fingerprints. After a discussion off the record, Officer Stairhime testified that he obtained appellant's fingerprints on April 6, 2000.

The next three unrecorded bench conferences occurred during the punishment phase of the trial. The State questioned a Harris County deputy sheriff assigned to the Probable Cause Court concerning "anything unusual that was said by [appellant] at that arraignment." Appellant objected, and a discussion was held off the record. Appellant's objection was overruled, and the deputy sheriff testified that appellant said: "[H]ow can they pick me out of a line up when I was wearing a mask?" Later, a friend from appellant's neighborhood stated that appellant sold "crack" for a living. Appellant objected, and a discussion was held off the record. The trial court then sustained appellant's objection and instructed the jury to disre-

gard the statement. Finally, the State questioned appellant's sister about when appellant "first started getting in trouble with the law." The State asked appellant's sister if she recalled appellant going to juvenile court. Appellant objected; and, after a discussion off the record, the trial court overruled his objection. Appellant's sister then testified that she knew appellant was on probation in 1996.

 A court reporter is required to make a full record of the proceedings unless excused by agreement of the parties. TEX.R.APP.P. 13.1(a); *Tanguma v. State,* 47 S.W.3d 663, 667 (Tex.App.-Corpus Christi 2001, pet'n ref'd).[1] The record does not indicate that there was an agreement by the parties not to record the bench conferences in question. The court reporter's failure to record all the bench conferences absent an agreement of the parties constitutes error. *Tanguma v. State,* supra. We must now determine whether the error affected appellant's substantial rights. TEX.R.APP.P. 44.2(b); *Tanguma v. State,* supra. An error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Cr. App.1997).

 The record shows that, after the second unrecorded bench conference, appellant stated that he had no objection to admitting State's Exhibit No. 3 and to showing the front of the exhibit to the jury. We, therefore, find that appellant's substantial rights were not affected by the court reporter's failure to record that

bench conference as appellant would not have preserved any argument in admitting the exhibit for review on appeal. See *Tanguma v. State,* supra. After the sixth unrecorded bench conference, appellant's objection was sustained; and the jury was instructed to disregard the testimony. Again we find that any error in not recording the conference was not harmful to appellant.

The record shows that on each of the remaining unrecorded bench conferences, appellant's objections were overruled. After the unrecorded bench conferences, the State either clarified the question or moved on to another topic. Appellant did not make any further objections. After reviewing the testimony relating to the remaining unrecorded bench conferences, we do not find that appellant's substantial rights were affected by the court reporter's failure to record the bench conferences. Appellant's first point of error is overruled.

In his second point of error, appellant complains that the State engaged in prosecutorial misconduct in making its opening statement. During its opening statement, the State said:

> Mr. Kim, however, had a man with a gun right at his head. He saw his face. He heard his voice. And he'll come here today and tell you it's that man, [appellant.] That day, January 14th of 2000, the Kims' lives changed. They sold their store because they were afraid—

The trial court sustained appellant's objection, instructed the jury to disregard the

---

1. We note that in *Polasek v. State,* 16 S.W.3d 82, 89 (Tex.App.-Houston [1st Dist.] 2000, pet'n ref'd), the court held that TEX.R.APP.P 13.1 is void because it is "an enlargement of a defendant's substantive rights, in violation of the mandate that rules not modify the substantive rights of the litigants." The court also held that Rule 13.1 impermissibly conflicts with TEX. GOV'T CODE ANN. § 52.046(a) (Vernon 1998) which provides that the court reporter shall attend all sessions of court and take notes upon request. *Polasek v. State,* supra. We decline to follow Section 3 of the *Polasek* opinion.

statement, and denied appellant's motion for a mistrial.

■ We find that the State's argument was not so prejudicial as to deny appellant a fair trial. *Manning v. State*, 864 S.W.2d 198, 204 (Tex.App.-Waco 1993, pet'n ref'd). The court's instruction to disregard the prosecutor's comment was sufficient to remove any prejudicial effect of the opening statement from the minds of the jurors. *Manning v. State*, supra. The trial court did not err in denying appellant's motion for mistrial. Appellant's second point of error is overruled.

■ In his third point of error, appellant argues that the State "conducted a tirade and inflammatory jury argument rather than voir dire" and violated his right to due process under the United States and Texas Constitutions. Appellant specifically complains of the State's comment during voir dire:

> Please be very careful to not say that you can't be fair on a case, can't afford him his constitutional rights and extend him the full range of punishment under the law because you don't want to be a juror. I need good law-abiding citizens who have jobs and have commitments and have things going on in their lives on that jury panel. You're the kind of people who have responsibilities and aren't afraid to take on the responsibility. You're the kind of people who are tired of crime and want to do something about it. You're the kind of people I need.

Appellant's objection to the voir dire was sustained. Appellant did not request an instruction for the jury panel to disregard the comment or move for a mistrial. When appellant has been given all the relief he requested at trial, there is nothing to complain of on appeal. *Cook v. State*, 858 S.W.2d 467, 473 (Tex.Cr.App. 1993). Appellant must obtain an adverse

ruling in order to preserve a matter for review. *Cook v. State*, supra.

■ Moreover, statements made by counsel generally will not constitute reversible error unless, in light of the record as a whole, the statements are extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the proceedings. *Norton v. State*, 930 S.W.2d 101, 103–04 (Tex.App.-Amarillo 1996, pet'n ref'd). In voir dire examinations, great latitude should be allowed so that counsel for both the State and the defense have a good and sufficient opportunity to assess the relative desirability of the members of the venire. *Norton v. State*, supra. We find that the State's comment was neither extreme nor manifestly improper. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant contends that the trial court erred in denying his motion for mistrial after the State engaged in an improper line of questioning. On cross-examination, during the guilt/innocence phase of the trial, appellant testified that he had previously had long hair with braids but that he had cut it after the day of the offense. The State asked appellant why he wanted the jury to know that he had not cut his hair prior to January 14. Appellant's objection to the form of the question was sustained. The State then asked appellant: "Why is it that you want the jury to know that you had cornrows on the 14th?" Appellant responded that he wanted to "let them know that [he had] been in the store several times." The State then asked: "Is that something you talked about with your defense attorney?" Appellant's objection was sustained, and the trial court instructed the jury to disregard the statement. Appellant argues that the State's line of questioning constituted an invasion of the

privileged communications between attorney and client.

A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex.Cr.App.1999), *cert. den'd*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). The asking of an improper question will seldom call for a mistrial because, in most cases, any harm can be cured by an instruction to disregard. *Ladd v. State*, supra. A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. *Ladd v. State*, supra. A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. *Ladd v. State*, supra; *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Cr.App. 1993). We find that the State's question was not so inflammatory that it could not be cured by an instruction to disregard. The trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's fourth point of error is overruled.

In his fifth and sixth points of error, appellant complains that the State made an improper jury argument during both the guilt/innocence and punishment phases of the trial. During the guilt/innocence phase of the trial, the State argued about the victims' fear of appellant both during the robbery and at trial. The State then said that "the best thing that you can do is you can take [appellant] off the streets. You can protect the [victims] that way. You can protect the rest of us that—." Appellant's objection was overruled. The State went on to argue about making the victims feel safe. Appellant's objection was again overruled. The State

continued by saying that an important consideration for the jury was "the safety of the [victims] and the safety of the rest of us. . . . It's about all of our safety." Appellant's objection was again overruled; and the trial court stated: "This is a plea for law enforcement. This is argument." We agree with the trial court that the State's argument was a proper plea for law enforcement. See *Wesbrook v. State*, 29 S.W.3d 103 (Tex.Cr.App.2000), *cert. den'd*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001); *Torres v. State*, 92 S.W.3d 911 (Tex.App.-Houston [14th Dist.] 2002, no pet'n).

At the punishment phase of the trial, the State argued:

> This is a young man who since the time that he was 15 or 16 years old, according to his own sister, he has committed crimes of theft, criminal trespass as a juvenile. . . . After that probation—or during that same probation he violated the probation. He didn't meet the terms that the Judge ordered him to comply with. So he was put into jail, state jail. He did eight months on that case. But the only time that [appellant] has ever stayed out of trouble in his life prior to the time he was 15 years old was that 8 months while he was in jail. Because by the time—

Appellant's objection that the argument was a misstatement of the evidence was overruled. During the punishment phase of the trial, appellant's sister testified about appellant's previous offenses, convictions, and jail time. The prosecution is afforded a wide degree of latitude in drawing reasonable deductions from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Cr.App.1988). We find that the State's argument was a reasonable deduction from the evidence presented dur-

ing the punishment phase of the trial. *Coble v. State*, 871 S.W.2d 192 (Tex.Cr.App. 1993), *cert. den'd*, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994). Appellant's fifth and sixth points of error are overruled.

In his seventh point of error, appellant argues that the trial court erred in overruling his motion to suppress the in-court identification of him because it was the product of an impermissibly suggestive pretrial identification. In determining the admissibility of an in-court identification, we engage in a two-step analysis: (1) was the out-of-court identification procedure impermissibly suggestive; and (2) did that suggestive procedure give rise to a very substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex.Cr.App.1995). This analysis requires an examination of the "totality of the circumstances" surrounding the particular case and a determination of the reliability of the identification. *Barley v. State*, supra.

Officer Schultea testified at the hearing on appellant's motion to suppress that appellant was a suspect in the robbery of the beauty supply store and that, after interviewing appellant, he asked appellant to participate in a lineup. Appellant agreed, and Officer Schultea selected four other individuals to participate in the lineup who had the same general appearance as appellant. Officer Schultea allowed appellant to choose the order in which he appeared in the lineup, and appellant chose the third position. The victim viewed the lineup live, and the lineup was videotaped. Officer Schultea testified that no one suggested to the victim that the person who committed the offense might be in the lineup. The victim identified appellant from the lineup as the person who committed the offense based upon "his mannerisms and body shape and what he saw of his face."

Each participant in the lineup was asked to say: "Don't move. Where's the money?" Officer Schultea stated that, when the victim heard appellant's voice, he was positive in his identification of appellant.

The victim testified at the hearing through an interpreter that, during the robbery, the intruder had a hood on his head and a shirt pulled up over his chin. The victim could see the intruder's forehead, eyes, and nose. The victim stated that the police called him to come view a lineup. The victim stated that he recognized the person who robbed his store in the lineup. The victim testified that no one suggested to him which participant in the lineup committed the offense. The victim said that, during the lineup, he recognized appellant's voice when appellant spoke the phrase: "Don't move. Where's the money?"

The victim identified appellant at the hearing as the person who robbed his store. The State asked the victim if he remembered appellant from the robbery, and the victim responded: "Yes." When asked if he would have recognized him regardless of the lineup, the victim responded: "I'm not sure at this point." On cross-examination, the victim said that he knew the police had caught the suspect who they believed had robbed the victim's store.

The trial court asked the victim some questions for clarification. The trial court asked the victim if he was identifying appellant because of the lineup or because the victim remembered appellant from the robbery. The victim responded: "Because he's the one who robbed me." The trial court asked the victim if he could have identified appellant in court if the victim had not viewed the lineup. The victim responded: "Because I try so hard to forget about him maybe." The victim also said that he identified appellant based

upon both the lineup and his memory from the robbery.

Appellant specifically argues that the pretrial lineup was impermissibly suggestive because: (1) he was the only one in the lineup wearing all white clothing; (2) he was the heaviest person in the lineup, had the most muscular build, and had the darkest complexion; (3) the victim admitted he told the police he could not identify the assailant's face; (4) the victim admitted that he knew the police had a suspect they believed committed the offense; and (5) the victim admitted he identified appellant at trial because he remembered appellant from the lineup.

The record shows that each participant in the lineup was dressed in civilian clothes. Appellant was wearing all white clothing, and another participant was wearing all black clothing. The record shows that appellant was 20 years old, was six-foot one-inch tall, and weighed 180 pounds. The other participants were age 20, 21, 22, and 31. Two of the other participants weighed 165 pounds and two weighed 170 pounds. Two of the other participants were also six feet one inch, one participant was six foot, and the other was five feet eleven inches. The Court of Criminal Appeals has stated that "suggestiveness" may be created by the manner in which the pretrial identification procedure is conducted. *Ibarra v. State*, 11 S.W.3d 189, 196 (Tex.Cr.App.1999), *cert. den'd*, 531 U.S. 828, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). However, neither due process nor common sense requires that the physical characteristics of the participants in a lineup be identical. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex.Cr.App.1985), *cert. den'd*, 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). In *Buxton*, the court found that there was no suggestive procedure constituting a violation of due process, even though the men in the lineup ranged in height from five feet nine inches to six feet two inches, in weight from 175 pounds to 210 pounds, had various skin tones, and wore different types of clothing.

The trial court found that the lineup was not unnecessarily suggestive. The trial court noted in regard to the in-court identification that "there's obviously much difficulty obtaining answers from [the victim] because of the language difficulty and the interpreter." The trial court also noted that the victim stated on "at least two or three occasions during questioning that he was making the identification based on his memory of the robbery." We agree with the trial court that the lineup was not impermissibly suggestive. The trial court did not err in denying appellant's motion to suppress the in-court identification. Appellant's seventh point of error is overruled.

In his eighth point of error, appellant contends that the trial court erred in allowing evidence of his post-arrest silence. During the direct examination of Officer Schultea, the State asked what occurred after the lineup. The State then asked if Officer Schultea did anything else in his investigation. Officer Schultea responded that he had an opportunity to interview appellant again. The State asked about that interview, and Officer Schultea responded that appellant "chose not to speak." Appellant's objection was sustained, and appellant did not request an instruction to disregard or move for a mistrial.

The general rule is that, to preserve error, the defendant must object until receiving an adverse ruling. See *Harris v. State*, 784 S.W.2d 5 (Tex.Cr.App. 1989), *cert. den'd*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). Error in admitting improper evidence may be generally corrected by a withdrawal and an

instruction to disregard except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Waldo v. State,* 746 S.W.2d 750 (Tex.Cr. App.1988). Because there was only one isolated reference to appellant's post-arrest silence, any harm could have been cured by an instruction to disregard; and the failure to object and to ask for an instruction waived error. *Juhasz v. State,* 827 S.W.2d 397, 405 (Tex.App.-Corpus Christi 1992, pet'n ref'd). Appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.