JAMES PRESTON FRANCIS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-046-CR

JAMES PRESTON FRANCIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant James Preston Francis appeals his conviction for aggravated kidnapping.  A jury found Francis guilty, and the trial court sentenced him to thirty years’ confinement.  Francis brings four points on appeal.  We will affirm.

II.  Factual and Procedural Background

Paula Porter was Francis’s ex-girlfriend.  After Porter broke up with Francis, the two remained friends.  One day, Francis went to Porter’s apartment in North Richland Hills and told her that he had left some money in the trunk of her car.  Porter, who was wearing only a long night shirt and house shoes, walked out to her car with Francis, and after Porter opened the car trunk, Francis punched her in her face.  Porter fell into the trunk, and as she tried to get out, Francis kicked her back into the trunk and said, “[B]itch, I’m going to kill you.”  Francis slammed the trunk closed, and he drove off with Porter screaming and locked in the trunk. 

Porter could talk to Francis through the trunk; she tried to calm him down and said that she wanted to “work this out.”  Francis stopped the car “[s]omewhere – close to Rosedale, Berry, somewhere around there . . . [in] the bad part of town” and let Porter out of the trunk.  Francis called Porter’s roommate from a payphone nearby, told her not to call the police, and put Porter on the phone to tell her that she was okay.  Porter then convinced Francis to let her take her car to go home and put on some clothes; she told Francis she would return.  Porter drove straight to her apartment complex; the police had already arrived.  Francis talked to the police and gave a written statement several days later. 

At trial, Porter’s roommate and two other witnesses testified regarding what they saw take place that day.  Porter’s roommate testified that she heard a woman screaming and went outside to find Francis leaning in the backseat of Porter’s car.  She ran down to the car and tried to open the door, but Francis locked the doors and drove off.  She testified that she realized that Porter was in the trunk of her car because she heard screams coming from the trunk.  The two other witnesses, high-school-aged young men, testified that they saw a black man throw a woman into the trunk of a car.  They testified that the woman was screaming and trying to fight her way out of the trunk.  They tried to follow the car but lost it. 

The jury found that Francis “with the intent to inflict bodily injury on or terrorize Paula Porter, intentionally or knowingly abduct[ed] [her] by restraining [her] without consent by moving [her] from one place to another with the intent to prevent the liberation of [her] by secreting or holding [her] in a place [she] was not likely to be found,” as alleged in the indictment. 

III.  
Proper Jury Argument
 

In his first point, Francis contends that the trial court erred by overruling his objection to the following closing argument by the State at the guilt-innocence stage: “I want you to be careful for some unsuspecting female who might encounter [Francis] at a later date.”  Specifically, Francis contends that this statement was a comment on his future dangerousness, which he contends is “solely proper on the issue of the punishment.”  The State asserts that this argument was a proper plea for law enforcement. 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  

 
It is generally improper for the State to comment on punishment during the guilt-innocence stage of the trial. 
 See McClure v. State
, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976); 
Cherry v. State
, 507 S.W.2d 549, 549 (Tex. Crim. App. 1974).  However, not every reference to punishment at the guilt-innocence stage is improper.  
Wright v. State
, 178 S.W.3d 905, 930 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (citing 
Mann
 
v. State
, 718 S.W.2d 741, 744 (Tex. Crim. App. 1986), 
cert. denied
, 481 U.S. 1007 (1987)). 
  

The State’s argument at issue here is more in the nature of a plea for law enforcement than an improper comment on punishment.  
See, e.g., Smith v. State
, 114 S.W.3d 66, 72 (Tex. App.—Eastland 2003, pet. ref’d) (holding as proper plea for law enforcement State’s argument in guilt-innocence stage that the jury should get the defendant off the streets to protect the victim and “the rest of us”); 
cf. Ganesan v. State
, 45 S.W.3d 197, 206 (Tex. App.—Austin 2001, pet. ref’d) (holding that State’s closing argument at guilt-innocence stage that the jury would be condemning the victims to death if they were to find the defendant not guilty was improper but stating that prosecutors could urge jury to convict “to punish [defendant’s] past criminal conduct and to prevent such misconduct in the future”).  The statement in this case was not of such a degree that it “[told] the jury to ignore their duties to decide guilt or innocence and get to punishment because that is the only issue in the case.”  
Mann
, 718 S.W.2d at 744 
(citing 
Cherry,
 507 S.W.2d at 549).  
We hold that the statement as issue was a proper plea for law enforcement and, consequently, that the trial court did not err by overruling Francis’s objection to the statement. 
See Borjan v. State
, 787 S.W.2d 53, 55-56 (Tex. Crim. App. 1990) (holding that prosecutor may argue, as a proper plea for law enforcement, the impact of the verdict on the community and the relationship between the jury’s verdict and the deterrence of crime in general).  We overrule Francis’s first point.

IV.  Request for Expert Evaluation

Prior to trial, Francis filed a Motion for Sanity Examination; the trial court granted the motion and appointed Dr. Stephen Karten to evaluate him.  The trial court’s order granting Francis’s motion did not advise Dr. Karten of the elements of the insanity defense, as required by prior article 46.03 of the code of criminal procedure, which was in effect at the time of the offense.  
See 
Act of May 18, 1977, 65th Leg., R.S., ch. 596, § 2, art. 46.03, § 3(c), 1977 Tex. Gen. Laws 1458, 1467 (repealed 2005) 
(current version at 
Tex. Code Crim. Proc. Ann. 
art. 46C.101(b) (Vernon Supp. 2005)).  Dr. Karten filed an examination report with the court in which he discussed Francis’s competency to stand trial, not his sanity. 

In his second point, Francis argues that the trial court erred by failing to advise Dr. Karten on the elements of the insanity defense in its order granting Francis’s Motion for Sanity Examination.  The State responds that Francis failed to preserve this issue by failing to object to the error, if any, at trial.  Francis did not notify the trial court of the order’s defect in not advising Dr. Karten of the elements of the insanity defense, nor did Francis request further evaluation because Dr. Karten’s report dealt with only his competency to stand trial, nor did Francis request a continuance.  The error in the trial court’s denial was not pointed out to the trial court, and the trial court did not have an opportunity to correct the defect; thus, Francis has not preserved this issue for appeal.  
See 
Tex. R. App. P.
 33.1(a)(1); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); 
Mosley v. State
, 983 S.W.2d 249, 266 (Tex. Crim. App. 1998), 
cert. denied
, 526 U.S. 1070 (1999);
 see also Aschbacher v. State
, 61 S.W.3d 532, 538 (Tex. App.—San Antonio 2001, pet. ref’d) (holding that alleged error in definition of “legal insanity” in trial court’s order appointing expert to perform insanity evaluation was not preserved for appellate review because defendant made no objection to the order either pretrial or during trial).  We overrule Francis’s second point. 

V.  Factual Sufficiency of the Evidence of Aggravated Kidnapping

In his third point, Francis contends that the evidence was factually insufficient to convict him of aggravated kidnapping.  
Specifically, Francis argues that the State failed to show that he abducted Porter. 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.    A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

A person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to inflict bodily injury on her or to terrorize her.  
Tex. Penal Code Ann. 
 § 20.04(a)(4)-(5) (Vernon 2003).  “Abducting” includes restraining a person with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found.  
Id.
 § 20.01(2)(A) (Vernon Supp. 2005).  When the defendant “forcibly drives another person to various parts of a city and keeps that person isolated with intent to prevent liberation by anyone who might be capable of helping the person, abduction is proven.”  
Wilson v. State
, 863 S.W.2d 59, 66 (Tex. Crim. App. 1993).  In such a case, “the claim that the person was not secreted or held in a place where the person was not likely to be found is of no importance.”  
Id.
  

Here, the record demonstrates that Francis confined Porter in the trunk of her car where she could not escape and drove to an area that Porter was not familiar with, at which time Porter convinced Francis to let her go free.  The evidence establishes that Francis forcibly drove Porter to another part of the city and kept her isolated in her trunk with the intent to prevent liberation by anyone who might be capable of helping her; the fact that several witnesses saw Porter in the trunk of her car before Francis drove off does not prevent an “abduction” finding.  
See Wilson
, 863 S.W.2d at 66; 
see also Fann v. State
, 696 S.W.2d 575, 576 (Tex. Crim. App. 1985) (holding that sufficient evidence existed to prove that defendant abducted victims when defendant drove victims from an area in which they might reasonably have been found and kept them isolated from anyone who could have helped them); 
Sanders v. State
, 605 S.W.2d 612, 614 (Tex. Crim. App. 1980 [Panel Op.]) (holding that sufficient evidence existed to prove that defendant abducted victim when defendant held victim in an automobile being driven on city streets where he was not found for approximately one hour); 
Megas v. State
, 68 S.W.3d 234, 240 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (holding that pulling victim into car to prevent her from escaping and driving away from people who had stopped to help showed intent to isolate victim from those who might have assisted her).  Additionally, Francis had already abducted Porter when he let Porter talk to her roommate on a payphone and eventually let her go free; contrary to Francis’s assertion, these subsequent facts do not negate the previous abduction.   
See Sanders
, 605 S.W.2d at 614 (holding that the definition of “abduct” does not require that the victim be held any certain length of time).   We have reviewed the record.  Viewing all the evidence in a neutral light, favoring neither party, we hold that the jury was rationally justified in finding the essential elements of aggravated kidnapping beyond a reasonable doubt; 
the evidence supporting the verdict is not too weak to support the finding of guilt beyond a reasonable doubt, and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met.
(footnote: 2)  
Zuniga
, 144 S.W.3d
 at 484-85.  We overrule Francis’s third point. 

VI.  Legally Sufficient Evidence to Support Habitual Criminal Finding

The reporter’s record reflects that the following exchange took place at the beginning of the punishment phase:

THE COURT:  All right.  Mr. Francis, to the Habitual Offender Notice, you may plead true or not true.

THE DEFENDANT:  Not true.

THE COURT: And you are plead [sic] true because it is true?

THE DEFENDANT: Yes.

THE COURT:  Anybody offer any hope of pardon or parole to get to you [sic] plead true?

THE DEFENDANT:  Sir?

THE COURT:  Nobody offered you hope of pardon or parole to get you to plead true?

THE DEFENDANT:  No.

THE COURT:  Nobody told you they would harm you if you did not plead true?

THE DEFENDANT:  No.

THE COURT:  This is a free and voluntary act on your part?

THE DEFENDANT:  Yes.

THE COURT:  All right.  The Court is going to make a finding that the Habitual Offender Notice is in fact true. 

The State then offered into evidence the pen packets for four prior convictions against Francis. 

In his fourth point, Francis argues that the evidence was insufficient to sustain the finding made during the punishment phase of trial that he was a habitual criminal.
(footnote: 3)  Specifically, Francis claims that the State failed to prove that he was the same person named in the pen packets by not offering any evidence of fingerprint comparisons.  

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

Although the reporter’s record reflects that Francis pleaded “not true” to the habitual offender allegation, the remainder of the record demonstrates that this was clearly a transcription error.  Francis’s defense counsel did not attempt to correct the judge while he was admonishing Francis.  In fact, during closing arguments at the punishment stage, Francis’s defense counsel stated, “Your Honor, at this time I would ask the Court that you understand 
my client has accepted responsibility with respect to the enhancement counts.  Obviously, he is habitual. 
 The minimum is 25 to life at this point.” [emphasis added.]  The judgment on the jury verdict of guilty states that Francis pleaded true to the habitual offender allegation. 

A plea of “true” to enhancement allegations is different from a plea at the guilt-innocence stage of the trial and constitutes evidence. 
 Wilson v. State
, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984).  A defendant, by pleading “true” to enhancement allegations, removes the burden from the State to prove the prior conviction. 
 Harvey v. State
, 611 S.W.2d 108, 111 (Tex. Crim. App.), 
cert. denied
, 454 U.S. 840 (1981); 
Thomas v. State
, 849 S.W.2d 405, 406 (Tex. App.—Fort Worth 1993, no pet.).  A plea of “true” constitutes sufficient proof to support the enhancement allegation.  
Wilson
, 671 S.W.2d at 526. Under such circumstances, an accused cannot be heard to complain on appeal that the evidence is insufficient. 
 Dinn v. State
, 570 S.W.2d 910, 915 (Tex. Crim. App. 1978 [Panel Op.]); 
Skillern v. State
, 890 S.W.2d 849, 882 (Tex. App.—Austin 1994, pet. ref’d). 

Thus, because the record demonstrates that Francis pleaded true to the enhancement allegations, although the reporter’s record erroneously states that he pleaded “not true,” the evidence is legally sufficient to support the trial court’s finding that the habitual offender allegation was true.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Hampton
, 165 S.W.3d at 693;  
Dinn
, 570 S.W.2d at 915.  We overrule Francis’s fourth point.

VII.  Conclusion

Having overruled all of Francis’s four points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: July 20, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Francis relies on 
Beeman v. State
, 828 S.W.2d 265, 266-67 (Tex. App.—Fort Worth 1992, pet. ref’d) as support for his argument, but 
Beeman
 held that evidence that the defendant took the victim to the storeroom area of the business where she worked was insufficient to prove beyond a reasonable doubt that he secreted the victim and held her in a place where she was not likely to be found; the storeroom was visible to anyone who came into the store and used the public restrooms. 
Beeman
 is clearly distinguishable from the facts of this case, where Francis locked Porter in the trunk of her car.

3:
Because Francis only challenges the sufficiency of the evidence, citing only pre-
Clewis
 cases, we interpret his argument as a legal insufficiency challenge.  
See
 
Clewis v. State
, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996); 
Moon v. State
, 44 S.W.3d 589, 593 (Tex. App.—Fort Worth 2001, pet. ref’d).