COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-046-CR

 

 

JAMES PRESTON FRANCIS                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 

I.  Introduction

Appellant James Preston Francis appeals his
conviction for aggravated kidnapping.  A
jury found Francis guilty, and the trial court sentenced him to thirty years=
confinement.  Francis brings four points
on appeal.  We will affirm.

 

 








II.  Factual and Procedural Background

Paula Porter was Francis=s
ex-girlfriend.  After Porter broke up
with Francis, the two remained friends. 
One day, Francis went to Porter=s
apartment in North Richland Hills and told her that he had left some money in
the trunk of her car.  Porter, who was
wearing only a long night shirt and house shoes, walked out to her car with
Francis, and after Porter opened the car trunk, Francis punched her in her
face.  Porter fell into the trunk, and as
she tried to get out, Francis kicked her back into the trunk and said, A[B]itch,
I=m going
to kill you.@ 
Francis slammed the trunk closed, and he drove off with Porter screaming
and locked in the trunk. 

Porter could talk to Francis through the trunk;
she tried to calm him down and said that she wanted to Awork
this out.@ 
Francis stopped the car A[s]omewhere
B close
to Rosedale, Berry, somewhere around there . . . [in] the bad part of town@ and let
Porter out of the trunk.  Francis called
Porter=s
roommate from a payphone nearby, told her not to call the police, and put
Porter on the phone to tell her that she was okay.  Porter then convinced Francis to let her take
her car to go home and put on some clothes; she told Francis she would
return.  Porter drove straight to her
apartment complex; the police had already arrived.  Francis talked to the police and gave a
written statement several days later. 








At trial, Porter=s
roommate and two other witnesses testified regarding what they saw take place
that day.  Porter=s
roommate testified that she heard a woman screaming and went outside to find
Francis leaning in the backseat of Porter=s
car.  She ran down to the car and tried
to open the door, but Francis locked the doors and drove off.  She testified that she realized that Porter
was in the trunk of her car because she heard screams coming from the
trunk.  The two other witnesses,
high-school-aged young men, testified that they saw a black man throw a woman
into the trunk of a car.  They testified
that the woman was screaming and trying to fight her way out of the trunk.  They tried to follow the car but lost it. 

The jury found that Francis Awith the
intent to inflict bodily injury on or terrorize Paula Porter, intentionally or
knowingly abduct[ed] [her] by restraining [her] without consent by moving [her]
from one place to another with the intent to prevent the liberation of [her] by
secreting or holding [her] in a place [she] was not likely to be found,@ as
alleged in the indictment. 

III.  Proper Jury Argument 








In his first point, Francis contends that the
trial court erred by overruling his objection to the following closing argument
by the State at the guilt-innocence stage: AI want
you to be careful for some unsuspecting female who might encounter [Francis] at
a later date.@ 
Specifically, Francis contends that this statement was a comment on his
future dangerousness, which he contends is Asolely
proper on the issue of the punishment.@  The State asserts that this argument was a
proper plea for law enforcement. 

To be permissible, the State=s jury argument
must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; or (4)
plea for law enforcement.  Felder v.
State, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), cert. denied,
510 U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim.
App. 1973).  

 It is
generally improper for the State to comment on punishment during the guilt‑innocence
stage of the trial.  See McClure v.
State, 544 S.W.2d 390, 393 (Tex. Crim. App. 1976); Cherry v. State,
507 S.W.2d 549, 549 (Tex. Crim. App. 1974). 
However, not every reference to punishment at the guilt‑innocence
stage is improper.  Wright v. State,
178 S.W.3d 905, 930 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d)
(citing Mann v. State, 718 S.W.2d 741, 744 (Tex. Crim. App.
1986), cert. denied, 481 U.S. 1007 (1987)).   








The State=s argument at
issue here is more in the nature of a plea for law enforcement than an improper
comment on punishment.  See, e.g.,
Smith v. State, 114 S.W.3d 66, 72 (Tex. App.CEastland 2003,
pet. ref=d) (holding as
proper plea for law enforcement State=s argument in
guilt-innocence stage that the jury should get the defendant off the streets to
protect the victim and Athe rest of us@); cf. Ganesan
v. State, 45 S.W.3d 197, 206 (Tex. App.CAustin 2001, pet.
ref=d) (holding that
State=s closing argument
at guilt-innocence stage that the jury would be condemning the victims to death
if they were to find the defendant not guilty was improper but stating that
prosecutors could urge jury to convict Ato punish
[defendant=s] past criminal conduct and to prevent
such misconduct in the future@).  The statement in this case was not of such a
degree that it A[told] the jury to ignore their duties to
decide guilt or innocence and get to punishment because that is the only issue
in the case.@  Mann,
718 S.W.2d at 744 (citing Cherry, 507 S.W.2d at 549).  We hold that the statement as issue was a
proper plea for law enforcement and, consequently, that the trial court did not
err by overruling Francis=s objection to the statement. See
Borjan v. State, 787 S.W.2d 53, 55-56 (Tex. Crim. App. 1990)
(holding that prosecutor may argue, as a proper plea for law enforcement, the
impact of the verdict on the community and the relationship between the jury=s
verdict and the deterrence of crime in general).  We overrule Francis=s first
point.

IV.  Request for Expert Evaluation








Prior to trial, Francis filed a Motion for Sanity
Examination; the trial court granted the motion and appointed Dr. Stephen
Karten to evaluate him.  The trial court=s order
granting Francis=s motion did not advise Dr.
Karten of the elements of the insanity defense, as required by prior article
46.03 of the code of criminal procedure, which was in effect at the time of the
offense.  See Act of May 18, 1977,
65th Leg., R.S., ch. 596, ' 2, art.
46.03, ' 3(c),
1977 Tex. Gen. Laws 1458, 1467 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art.
46C.101(b) (Vernon Supp. 2005)).  Dr.
Karten filed an examination report with the court in which he discussed Francis=s
competency to stand trial, not his sanity. 








In his second point, Francis argues that the
trial court erred by failing to advise Dr. Karten on the elements of the
insanity defense in its order granting Francis=s Motion
for Sanity Examination.  The State
responds that Francis failed to preserve this issue by failing to object to the
error, if any, at trial.  Francis did not
notify the trial court of the order=s defect
in not advising Dr. Karten of the elements of the insanity defense, nor did
Francis request further evaluation because Dr. Karten=s report
dealt with only his competency to stand trial, nor did Francis request a
continuance.  The error in the trial
court=s denial
was not pointed out to the trial court, and the trial court did not have an
opportunity to correct the defect; thus, Francis has not preserved this issue
for appeal.  See Tex. R. App. P. 33.1(a)(1); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); Mosley v. State,
983 S.W.2d 249, 266 (Tex. Crim. App. 1998), cert. denied, 526 U.S. 1070
(1999); see also Aschbacher v. State, 61 S.W.3d 532, 538 (Tex. App.CSan
Antonio 2001, pet. ref=d) (holding that alleged error
in definition of Alegal insanity@ in
trial court=s order appointing expert to
perform insanity evaluation was not preserved for appellate review because
defendant made no objection to the order either pretrial or during trial).  We overrule Francis=s second
point. 

V.  Factual Sufficiency of the Evidence of
Aggravated Kidnapping

In his third point, Francis contends that the
evidence was factually insufficient to convict him of aggravated
kidnapping.  Specifically, Francis
argues that the State failed to show that he abducted Porter. 








In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party.  See
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable doubt.  Id. at 484.  There are two ways evidence may be factually
insufficient:  (1) when the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis
standard acknowledges that evidence of guilt can >preponderate= in
favor of conviction but still be insufficient to prove the elements of the
crime beyond a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  
     A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

A person commits the offense of aggravated
kidnapping if he intentionally or knowingly abducts another person with the
intent to inflict bodily injury on her or to terrorize her.  Tex.
Penal Code Ann.  '
20.04(a)(4)-(5) (Vernon 2003).  AAbducting@
includes restraining a person with intent to prevent her liberation by
secreting or holding her in a place where she is not likely to be found.  Id. '
20.01(2)(A) (Vernon Supp. 2005).  When
the defendant Aforcibly drives another person
to various parts of a city and keeps that person isolated with intent to
prevent liberation by anyone who might be capable of helping the person,
abduction is proven.@ 
Wilson v. State, 863 S.W.2d 59, 66 (Tex. Crim. App. 1993).  In such a case, Athe
claim that the person was not secreted or held in a place where the person was
not likely to be found is of no importance.@  Id. 














Here, the record demonstrates that Francis
confined Porter in the trunk of her car where she could not escape and drove to
an area that Porter was not familiar with, at which time Porter convinced
Francis to let her go free.  The evidence
establishes that Francis forcibly drove Porter to another part of the city and
kept her isolated in her trunk with the intent to prevent liberation by anyone
who might be capable of helping her; the fact that several witnesses saw Porter
in the trunk of her car before Francis drove off does not prevent an Aabduction@
finding.  See Wilson, 863 S.W.2d
at 66; see also Fann v. State, 696 S.W.2d 575, 576 (Tex. Crim. App.
1985) (holding that sufficient evidence existed to prove that defendant
abducted victims when defendant drove victims from an area in which they might
reasonably have been found and kept them isolated from anyone who could have
helped them); Sanders v. State, 605 S.W.2d 612, 614 (Tex. Crim. App.
1980 [Panel Op.]) (holding that sufficient evidence existed to prove that
defendant abducted victim when defendant held victim in an automobile being
driven on city streets where he was not found for approximately one hour); Megas
v. State, 68 S.W.3d 234, 240 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d)
(holding that pulling victim into car to prevent her from escaping and driving
away from people who had stopped to help showed intent to isolate victim from
those who might have assisted her). 
Additionally, Francis had already abducted Porter when he let Porter
talk to her roommate on a payphone and eventually let her go free; contrary to
Francis=s
assertion, these subsequent facts do not negate the previous abduction.   See Sanders, 605 S.W.2d at 614
(holding that the definition of Aabduct@ does
not require that the victim be held any certain length of time).       We
have reviewed the record.  Viewing all
the evidence in a neutral light, favoring neither party, we hold that the jury
was rationally justified in finding the essential elements of aggravated
kidnapping beyond a reasonable doubt; the evidence supporting the verdict is
not too weak to support the finding of guilt beyond a reasonable doubt, and the
contrary evidence is not so strong that the beyond-a-reasonable-doubt standard
could not have been met.[2]  Zuniga, 144 S.W.3d at 484-85.  We overrule Francis=s third
point. 

VI.  Legally Sufficient Evidence to Support
Habitual Criminal Finding

The reporter=s record
reflects that the following exchange took place at the beginning of the
punishment phase:

THE COURT:  All right.  Mr. Francis, to the Habitual Offender Notice,
you may plead true or not true.

 

THE DEFENDANT:  Not true.

 

THE
COURT: And you are plead [sic] true because it is true?

 

THE DEFENDANT:
Yes.

 

THE COURT:  Anybody offer any
hope of pardon or parole to get to you [sic] plead true?








 

THE DEFENDANT:  Sir?

 

THE COURT:  Nobody offered you
hope of pardon or parole to get you to plead true?

 

THE DEFENDANT:  No.

 

THE COURT:  Nobody told you they
would harm you if you did not plead true?

 

THE DEFENDANT:  No.

 

THE COURT:  This is a free and
voluntary act on your part?

 

THE DEFENDANT:  Yes.

 

THE COURT:  All right. 
The Court is going to make a finding that the Habitual Offender Notice
is in fact true. 

The State then offered into evidence the pen packets for four prior
convictions against Francis. 

In his fourth point, Francis argues that the
evidence was insufficient to sustain the finding made during the punishment phase
of trial that he was a habitual criminal.[3]  Specifically, Francis claims that the State
failed to prove that he was the same person named in the pen packets by not
offering any evidence of fingerprint comparisons.  








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the judgment in order to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d
691, 693 (Tex. Crim. App. 2005).

Although the reporter=s record
reflects that Francis pleaded Anot true@ to the
habitual offender allegation, the remainder of the record demonstrates that
this was clearly a transcription error. 
Francis=s defense counsel did not
attempt to correct the judge while he was admonishing Francis.  In fact, during closing arguments at the
punishment stage, Francis=s defense counsel stated, AYour
Honor, at this time I would ask the Court that you understand my client has
accepted responsibility with respect to the enhancement counts.  Obviously, he is habitual.  The minimum is 25 to life at this point.@
[emphasis added.]  The judgment on the
jury verdict of guilty states that Francis pleaded true to the habitual
offender allegation. 








A plea of Atrue@ to
enhancement allegations is different from a plea at the guilt-innocence stage
of the trial and constitutes evidence.  Wilson v. State, 671 S.W.2d 524, 526 (Tex.
Crim. App. 1984).  A defendant, by
pleading Atrue@ to
enhancement allegations, removes the burden from the State to prove the prior
conviction.  Harvey v. State, 611
S.W.2d 108, 111 (Tex. Crim. App.), cert. denied, 454 U.S. 840 (1981); Thomas
v. State, 849 S.W.2d 405, 406 (Tex. App.CFort
Worth 1993, no pet.).  A plea of Atrue@
constitutes sufficient proof to support the enhancement allegation.  Wilson, 671 S.W.2d at 526. Under such
circumstances, an accused cannot be heard to complain on appeal that the
evidence is insufficient.  Dinn v.
State, 570 S.W.2d 910, 915 (Tex. Crim. App. 1978 [Panel Op.]); Skillern
v. State, 890 S.W.2d 849, 882 (Tex. App.CAustin
1994, pet. ref=d). 

Thus, because the record demonstrates that
Francis pleaded true to the enhancement allegations, although the reporter=s record
erroneously states that he pleaded Anot
true,@ the
evidence is legally sufficient to support the trial court=s
finding that the habitual offender allegation was true.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Hampton, 165 S.W.3d at 693; 
Dinn, 570 S.W.2d at 915. 
We overrule Francis=s fourth
point.

VII.  Conclusion

Having
overruled all of Francis=s four points, we affirm
the trial court=s judgment.

 

SUE
WALKER

JUSTICE

 

PANEL B:   HOLMAN, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: July 20, 2006

 








 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]Francis relies on Beeman
v. State, 828 S.W.2d 265, 266-67 (Tex. App.CFort Worth 1992, pet. ref=d) as support for his
argument, but Beeman held that evidence that the defendant took the
victim to the storeroom area of the business where she worked was insufficient
to prove beyond a reasonable doubt that he secreted the victim and held her in
a place where she was not likely to be found; the storeroom was visible to
anyone who came into the store and used the public restrooms. Beeman is
clearly distinguishable from the facts of this case, where Francis locked
Porter in the trunk of her car.





[3]Because Francis only
challenges the sufficiency of the evidence, citing only pre-Clewis
cases, we interpret his argument as a legal insufficiency challenge.  See Clewis v. State, 922 S.W.2d
126, 133 (Tex. Crim. App. 1996); Moon v. State, 44 S.W.3d 589, 593 (Tex.
App.CFort Worth 2001, pet. ref=d).